Rossman, Appellant, *v.* Rosssman, Appellee.

[Cite as Rossman v. Rossman (1975), 47 Ohio App. 2d 103.]

(No. 34267—Decided December 18, 1975.)

*Mr. Walter L. Greene* and *Mr. Thomas D. McDonald,* for appellant.

*Mr. Robert I. Zashin,* for appellee.

Manos, J. Plaintiff-appellant, Marcia B. Rossman, appeals part of a Domestic Relations Court judgment in her divorce action against defendant-appellee, Joseph A. Rossman. On January 24, 1974 the plaintiff filed a divorce action against the defendant. The plaintiff predicated her action on gross neglect of duty and extreme cruelty. She requested the court to grant her custody of the parties' pre-school infant and award her child support. The plaintiff also requested an award of alimony and division of the marital property.

The plaintiff encountered difficulty in implementing discovery concerning the defendant's earning capacity. On February 21, 1974 she served interrogatories upon the defendant. The defendant persistently declined to respond to the interrogatories. On May 3, 1974, pursuant to the plaintiff's motion, the trial court ordered the defendant to answer the interrogatories. The interrogatories were answered by the defendant on May 15, 1974. However, many of the answers to questions dealing with the defendant's earning capacity were perfunctory or inaccurate.[1] Subse-

---

[1] For example the defendant's interrogatory answers state that his 1973 income was $21,000, whereas the defendant testified at trial that his 1973 income was $36,000.

quently the plaintiff took depositions of the defendant and his father, Leo Rossman. In reliance upon defense counsel's instructions[2] the defendant and his father refused to answer several questions pertaining to the defendant's earning capacity. On July 15, 1974 the plaintiff moved the court to reconvene the deposition and order the defendant and Leo Rossman to respond to the unanswered questions. On July 23, 1974 a domestic relations referee conducted a hearing on the issue raised by the plaintiff's motion. Pursuant to the referee's recommendation, the trial judge ordered the reconvening of the defendant's and Leo Rossman's depositions. The judge's order instructed the defendant and Leo Rossman to respond to the unanswered questions at the reconvened deposition.[3]

---

[2]It is improper for counsel to instruct a deposed party not to answer a question propounded at a civil deposition. Civ. R. 30(C) states, "All objections made at the time of the [deposition] to . . . the evidence presented, or the conduct of any party . . . shall be noted by the officer [taking] the deposition. *Evidence objected to shall be taken subject to the objections*" (emphasis added). See also Civ. R. 26(B)(1). When a party objects to questions asked at a deposition his proper remedy is stated in Civ. R. 32(B), 32(D)(3) and 30(D). Under *Ex Parte Oliver* (1962), 173 Ohio St. 125, syl. 1, "A witness who is not a party to a legal proceeding has no right, upon the taking of his deposition in such proceeding, to refuse to answer any question upon the advise of his counsel merely because such counsel believes that the testimony sought is irrelevant, incompetent or immaterial." Therefore it was improper for defense counsel to instruct Leo Rossman not to answer certain questions at the deposition.

[3]The court ordered the defendant and Leo Rossman to answer several unanswered questions regarding the defendant's earning capacity. Some of the questions that the court ordered the defendant to answer were:

"Do you have copies of any and all financial statements prepared including, but not limited to, copies of financial statements given to banks, savings and loan companies and financial companies?" Deposition page 2, line 12.

"Is there any reason to believe that the [financial] situation will be different in 1974?" Deposition page 4, line 14.

"Any other sources of income?" Deposition page 5, line 22.

"Did you ever admit to anyone that you had ways of getting money out of the business without paying taxes on it?" Deposition page 11, line 20.

On August 12, 1974, prior to the reconvening of the deposition, the trial judge *sua sponte* consolidated all pretrial discovery proceedings into trial. The judge informed the parties of his consolidation decision by letter.[4] On August 15, 1974 plaintiff's counsel wrote a letter to the trial judge objecting to the court's consolidation order. The plaintiff stressed that the consolidation order improperly terminated discovery before the plaintiff obtained complete depositions from the defendant and Leo Rossman. Counsel noted that the consolidation order precluded the plaintiff from benefiting from the judge's order reconvening the defendant's depositions.

On August 13, 1974, one day after the trial judge's consolidation letter, the defendant moved the court for a protective order pursuant to Civ. R. 26(C). The trial court never explicitly ruled on this motion.

The trial commenced on September 30, 1974. At this time plaintiff's counsel, Mr. Greene, once again objected to the trial court's premature termination of the plaintiff's discovery effort

"Mr. Greene: If the Court please, I would like to make one statement before commencing the plaintiff's case.

"We would like to reinforce our objections that we have made prior to this, to the court by letter, I believe, for the court's refusal to permit us to conclude the depositions which the referee had previously ordered be concluded, and for another respect, not enforcing its own rulings.

"Now, if the court please—

"The Court: May I make a comment on the reason why the Court has not proceeded with the objections; because

---

. One of the questions that Leo Rossman was ordered to answer was,

"Leo, of your own knowledge, do you know where Joe got the money to start the business?" Deposition page 7, line 20.

[4]The trial judge's letter stated,

"I have reviewed the pleadings in the above captioned matter. I am disturbed by the number of motions and answers, entries and correspondence, and the incipient hostility that this case has engendered.

"It is the suggestion of this Court that all motions, depositions, transcripts and pleadings be consolidated, and that this case be set for trial on September 18, 1974 at 9:00 A. M."

there was a multiplicity of motions and also passing back and forth, and the Court thought, with the interest of proceeding with this case to a conclusion, it would be better if I held everything in abeyance, and hopefully, in open Court, have all of the objections brought to light.

"Mr. Greene: May I just say this—I don't mean to belabor it, but, for instance, as an example, we were not furnished with the defendant's personal expenses until long after the deposition was concluded, and we had intended to go into detail to ask him questions, and we were never afforded that opportunity.

"The Court: The reason I brought it out in open court, is to give whoever is the aggrieved party the opportunity to cross-examine in open court, and, if necessary, subpoena duces tecum, or whatever is necessary to protect the parties."

The fundamental issue at the trial was the husband's earning capacity. The defendant husband testified that he was the owner of a gas station corporation which he operated since 1972. Prior to operating the station the defendant was employed as a school teacher. He testified that his 1973 earnings from the business were $36,000. He also testified that his annual personal expenses were $19,623.

Sheldon Berkman, a certified public accountant, testified on behalf of the plaintiff. Based on his examination of some of the corporation's records Mr. Berkman testified that the defendant's total income for 1973 equaled $36,642. Berkman concluded that Rossman's projected 1974 income equaled $74,000.

Thomas Kuchta, a business consultant specializing in gas station management, testified. Kuchta worked with the defendant's business on a daily basis. Kuchta testified that the defendant's 1973 income was $36,000. The witness stated that in 1974 the defendant would receive a salary of $26,000 plus a $10,000 bonus which was paid in the month prior to trial. Kuchta testified that the corporation's projected profit for 1974 was $19,600. Kuchta also testified extensively regarding the market factors that contributed to the defendant's past income, as well as those factors that could cause severe fluctuations in future income. After the trial

the judge determined that the defendant's approximate annual earnings were $19,000.[5]

On November 15, 1974 the judge issued his judgment on the plaintiff's complaint. The court granted the divorce and awarded Marcia custody of the parties' child. The court ordered the defendant to convey his interest in the marital home to the plaintiff. The wife was awarded $100 per week alimony for three years and $30 per week child support until the child attains majority. The husband was awarded all of the stock in the gas station corporation.

The plaintiff does not appeal the trial court's divorce and child custody determinations. The wife appeals the alimony and child support awards, as well as the trial court's division of the marital property. The wife's appeal assigns two errors, one of which contains merit.

*Assignment of Error I.*

"*The trial court committed error prejudicial to the plaintiff in requiring plaintiff to commence the trial without completing discovery.*"

Modern discovery procedures are designed to make civil trials "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States* v. *Procter & Gamble Co.* (1958), 356 U. S. 677, 682; *Hickman* v. *Taylor* (1947), 329 U. S. 495, 501. In *Hlavin* v. *Plechaty* (1971), 28 Ohio App. 2d 43 this court stated the policy underlying the discovery provisions of the Ohio Civil Rules.[6]

"The Rules of Civil Procedure contain broad provisions for discovery. Under Rule 26, discovery may be had of any matter, not privileged, which is relevant to the subject matter of the pending action. In doing so the rules exemplify *a policy of affording attorneys every opportunity and advantage in preparing their case before trial.*" *Hlavin, supra,* at 45 (emphasis added).

---

[5]See trial judge's Findings of Fact and Conclusions of Law, November 29, 1974, finding of fact number 9.

[6]The underlying policy of the Ohio discovery provisions "adopts the liberal discovery philosophy of the federal rules." *Staff Note,* Civ. R. 26(B)(1).

In the trial below the defendant's willful failure to comply with the discovery rules was followed by the trial judge's refusal to enforce his own order compelling discovery. This combination of events denied the plaintiff the pretrial opportunity to fully prepare her arguments on the fundamental issue of the defendant's earning capacity. The defendant's earning capacity was the fundamental issue at trial because a husband's ability to generate income is crucial in accurately assessing alimony and child support, as well as intelligently dividing marital property.[7] Joseph Rossman's earning capacity was a complex issue. Rossman's income and net worth were obscured by the interrelation of his personal finances with the present and future financial status of his gas station corporation. The transcending importance and the complexity of the defendant's earning capacity justified the plaintiff's desire to obtain depositions detailing Rossman's financial posture. The plaintiff's proper pretrial desire to elucidate the crucial, complex issue of the defendant's earning capacity placed a heavy burden on the trial court to insure that the plaintiff's depositions were fully answered. The court's duty to insure compliance with the pretrial deposition rules was intensified by the defendant's dilatory and erroneous answers to the financial questions propounded in the plaintiff's earlier interrogatories.[8] In spite of this duty the trial court *sua sponte* deprived the appellant of the opportunity to fully prepare herself to litigate the issue of the defendant's capacity to pay alimony and child support. The court's only justification for terminating the plaintiff's deposition effort was to expedite the conclusion of the case. The court labored under the mistaken belief that cross-examination at trial served the same purpose as a pretrial deposition. When a complex fundamental issue is the object of civil discovery,

---

[7]See R. C. 3105.18(B)(1), (9) and 3109.05(C), (E). R. C. 3105.-18(B) and 3109.05 became effective on September 23, 1974, seven days before trial. Therefore both sections apply to this litigation.

[8]See footnote 1, *supra*. The trial court was advised of the defendant's dilatory failure to comply with the discovery rules. See plaintiff's letter to the court dated August 15, 1974.

expediency alone is not a sufficient ground for a. judge to sua sponte terminate discovery. Furthermore, cross exam-. ination at trial is not an adequate substitute for pretrial discovery. The purpose of discovery is to aid a party *in his preparation of the case prior to trial.* The opportunity for such preparation is designed to facilitate an orderly and cogent presentation by both parties in front of the trier of fact. *Hlavin, supra* at 45. Cross-examination before the trier of fact is only meaningful when the cross-examiner has an adequate opportunity to prepare his questions prior to trial.

The appellee advances several reasons in support of the trial court's consolidation order. The appellee asserts that the plaintiff never specified the facts which he hoped to ascertain from the deposition that was terminated by the trial judge's consolidation. However a party seeking pre- trial discovery is not required to specify the facts he ex- pects to undercover by a pretrial deposition. The Ohio Supreme Court has recognized that "pretrial depositions are in many instances fishing expeditions." *Ex Parte Oliver* (1962), 173 Ohio St. 125; *Staff Notes* Civ. R. 26 (B)(1).

The appellee asserts that the judge's pretrial consoli- dation order is actually a ruling in favor of their own pre- trial motion for a protective order pursuant to Civ. R. 26 (C). The judge consolidated all discovery proceedings into trial a full day before the appellee filed his motion for a protective order. Therefore the judge terminated discovery; without regard to the appellee's motion for protection.

The appellee argues that the judge's consolidation or- der is justifiable exercise of the trial judge's discretionary authority to regulate the length of time in which discovery must be completed. A trial judge retains broad discretion- ary authority over the length of the pretrial discovery phase of litigation. This discretion permits the judge to insure that trial is not unduly postponed. However, such discretion is not limitless. The appellee's failure to comply with the plaintiff's previous good faith attempts to obtain crucial discoverable information caused the delay in com- pletion of pretrial discovery. Therefore the judge's consol-

**110**

idation order rewards the appellee's dilatory non-compliance with the discovery rules. A *sua sponte* exercise of judicial discretion that rewards a party's willful obstruction of his opponent's good faith discovery efforts is suspect. Such an exercise of judicial discretion must be justified by a weightier interest than expediency.

The policy favoring the fullest opportunity to complete discovery is the same in the Ohio and Federal courts. Therefore we adopt the standard employed by Federal appellate courts in reviewing a trial judge's discretionary decision to terminate discovery. An appellate court will reverse the decision of a trial court that extinguishes[9] a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights. See *Goldman* v. *Checker Taxi Co.* (7th Cir., 1963), 325 F. 2d 853, 856; *Roebling* v. *Anderson* (D. C. Cir., 1958), 257 F. 2d 615, 619 (Dismissal reversed and case remanded because trial court "improvidently" failed to compel discovery.)

The discovery question presented in *Goldman, supra* is similar to the question before this court. In *Goldman* the plaintiff filed an action against a taxi company alleging that he was injured in an automobile accident involving the defendant's taxi cab driven by the defendant's employee. The defendant denied that the accident occurred. The plaintiff, relying on Fed. R. Civ. P. 34, moved the court to compel the defendant to produce several business records which the plaintiff claimed supported his complaint. The trial court granted the plaintiff's motion with respect to most of the requested documents. The defendant produced none

---

[9]The appellee relies upon *State, ex rel Raydel,* v. *Raible* (1952), 92 Ohio App. 537 for the proposition that a trial judge has broad discretion to regulate the time and place of discovery. We agree with this principle. However, *Raydel* is not controlling in this case. In *Raydel* the trial judge properly exercised his discretion in postponing the taking of a deposition. The *Raydel* court expressly conditioned its holding on the fact that the trial judge "did not deny the right to take depositions." *Raydel* at 544. In Rossman's case the trial judge's premature termination of discovery denied the plaintiff the right to conclude her depositions prior to trial.

of the documents. The defendant merely answered the plaintiff's requests with its own interpretation of the documents as if responding to interrogatories. The Court of Appeals reversed the trial court's judgment for the defendant as improvidently prejudicial to the plaintiff's substantial rights. *Goldman* at 856. The court stressed that the discoverable records in the defendant's custody dealt with the "fundamental issue" in the case of whether an accident occurred. The court also stressed the defendant's failure to comply with the discovery order. *Goldman* is similar to the Rossman case because the defendants in both cases willfully failed to observe the discovery rules. Furthermore, in both cases the trial judge indulged the defendant's violation of the discovery rules by permitting the case to be tried without compelling the dilatory party to comply with a judicial discovery order. The judicial conduct in Rossman's case is worse than in *Goldman* because the judge below affirmatively, on his motion, and for no better reason than expediency, prematurely terminated the appellant's discovery rights.

The failure to enforce discovery in both *Goldman* and Rossman substantially prejudiced the respective plaintiffs' trial presentation of the issue that was fundamental in each case.[10] In *Goldman* the fundamental issue involved whether the accident occurred. In Rossman's case the fundamental issue involved the accurate determination of the husband's present and future earning capacity. The record indicates that the trial judge was confused by the presentation of this question at trial.

The trial judge's confusion is reflected by his finding that the appellee's approximate income was $19,000. The

---

[10]The appellee argues that the appellant was not prejudiced because the appellee's attorney answered each question which the trial court's order instructed the defendant and Leo Rossman to answer at the reconvened deposition. Defense counsel answered each question in a letter addressed to plaintiff's counsel dated August 2, 1974. Defense counsel's letter was an inadequate substitute for a deposed response where inquiring counsel could follow each answer with a related question. Furthermore, the defendant testified that he did not remember authorizing the letter sent by his counsel to the plaintiff's attorney.

trial judge reached this finding in spite of the appellee's admission that his 1973 income was $36,000 and Kuchta's testimony that Rossman's 1974 income would be $36,000.

The similarities between *Goldman* and Mrs. Rossman's appeal compel an identical result in both cases. Appellee Joseph Rossman failed to answer questions relating to the fundamental issue of his earning capacity propounded at a deposition. The defendant's silence violated Civ. R. 30 (C). The court ordered the defendant to comply with Rule 30(C). Without enforcing compliance with its order, the trial court compelled the litigants to launch into trial over the objection of Mrs. Rossman, the discovering party. The trial court's discovery order improvidently extinguished Mrs. Rossman's substantial rights. The plaintiff's first assignment of error is meritorious.

*Assignment of Error II.*

*"The judgment of the trial court is erroneous since it is based upon findings of fact that are against the manifest weight of the evidence."*

This assignment of error is moot because of our resolution of the first assignment of error.

Those portions of the trial court's judgment that were incorporated into the plaintiff's notice of appeal are reversed. The cause is remanded to the trial court for a new trial on the issues contained in the notice of appeal. The trial court is instructed not to proceed with trial until the depositions of the defendant and Leo Rossman are reconvened. At the reconvened deposition the defendant and Leo Rossman are ordered to answer the questions that they were instructed to answer by the trial court. The defendant and Leo Rossman are further ordered to fully comply with Civ. R. 30(C). Reversed and remanded.

●

*Judgment reversed.*

JACKSON, P. J., and CORRIGAN, J., concur.