OPINION
Appellant, Kimberly Biddle, is appealing a judgment of the Clark County Common Pleas Court Domestic Relations Division determining that Kimberly Biddle is not a suitable custodial parent and altering the child custody arrangement to give Robert Biddle custody of their daughter, Ashley Biddle.
In 1996, Kimberly Biddle (hereinafter "Kimberly") and Robert Biddle (hereinafter "Robert") divorced and Kimberly was named the custodial parent of their then two year old daughter, Ashley, and Robert had visitation. In June 18, 1999, Robert filed a motion for a change of residential parenting, requesting the trial court terminate the previous order and name Robert as Ashley's custodial parent. A hearing on the motion was held on September 23, 1999 and on November 24, 1999. Both parties presented credible witnesses, such as the guardian ad litem, Ashley's doctor, a social worker for children's services, and Ashley's teacher.
Additional evidence was offered in the form of sixteen videotapes of Ashley made by Robert and his new wife. Beginning approximately two years earlier, Robert and his new wife began videotaping the pick up of Ashley and filming her upon the arrival at Robert's home. Robert would have Ashley stand against a wall and film her body in order to document bruises appearing on Ashley. Additionally, Robert would film and comment on the cleanliness and appropriateness of Ashley's clothing and her personal hygiene. Robert and his new wife performed this ritual every time that Robert picked up Ashley for visitation, nearly eighty occasions. At the hearing, the magistrate permitted Robert to show certain dates from the videos which he stated demonstrated the worst of the bruising and neglect, and admitted all sixteen of the tapes as evidence over the objection of Kimberly's counsel. Additionally, in making his decision, the magistrate reviewed some of the videotapes in private without the presence of counsel.
Kimberly's counsel moved for a motion in limine prohibiting the showing of the videotapes at the start of the hearing. Kimberly's counsel objected on various grounds, one of which was that neither she nor Kimberly had been permitted to view the videotapes in their entirety. On the first day of the hearing, Kimberly's counsel stated that she had made several informal discovery requests to view the videotapes and was only permitted to view a portion of one of the videotapes at Robert's counsel's home. Although Kimberly's counsel took this opportunity and viewed a portion of one of the sixteen videotapes, she was unable to view all of the videotapes.
On the second hearing date, Kimberly's counsel informed the magistrate that she had still not been permitted to view the videotapes. When the magistrate inquired as to why she had not viewed them, she explained that she had made a formal written request for the production of videotapes but that Robert's counsel responded with a letter stating that Kimberly's counsel must provide approximately $200 for copies in order to view the videotapes. Since Kimberly did not have the money for the copies, neither she nor her counsel were permitted to view the videotapes in their entirety. Regardless, the magistrate admitted the videotapes into evidence. Also, the magistrate stated that in making his decision he would likely review the videotapes privately. (Tr. 11/24/99, p. 241).
 At the hearing each side presented credible witnesses supporting the position that he or she was the more suitable parent for Ashley. The evidence demonstrated that no relationship exists between the parties and that both parties have not been encouraging of a relationship with the other parent. As for the bruising, the only evidence of bruising was the videotapes and the testimony of Robert and his new wife. Ashley's doctor, teacher, friends, and family members all testified that they did not notice any excessive bruising on Ashley. Additionally, the social worker with children's services testified that five referrals to her office had been made alleging Kimberly abused Ashley and each time the charge was found to be unsubstantiated. Yet, the Guardian Ad Litem, upon viewing the videotapes, recommended that custody be placed with Robert as Kimberly did not sufficiently explain the bruising.
In his decision on December 9, 1999, the magistrate ruled that Kimberly was not a suitable custodial parent, terminated the previous order, and made Robert the custodial parent. The magistrate found that the videotapes displayed occasions when Ashley was dressed inappropriately, had poor hygiene, and bruising on her lower extremities which could not be explained by Kimberly to the lower court's satisfaction. Based on this, the magistrate found that a change in circumstances had occurred and terminated the previous court order, removing Ashley from Kimberly and placing her with Robert.
Kimberly filed objections to the magistrate's decision with the trial court on December 17, 1999. The trial court overruled Kimberly's objections and adopted the magistrate's decision on July 28, 2000. Kimberly filed her notice of appeal to this Court on August 22, 2000.
Kimberly asserts the following as her sole assignment of error:
 THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE AND CONSIDERED THE UNSWORN TESTIMONY OF THE MINOR CHILD GIVEN VIA VIDEOTAPE, ESPECIALLY WHEN THAT TESTIMONY COULD NOT BE CROSS-EXAMINED AND WAS NOT THE BEST EVIDENCE.
Kimberly argues that the lower court erred in admitting the videotapes when she had informed the court that neither she nor her counsel had viewed all of the videotapes as Robert's counsel had refused to let them view the videotapes unless they paid a $200 fee. Additionally, Kimberly argues that the lower court erred in failing to denote which of the videotapes it relied upon in making its decision when it viewed the videotapes outside of the presence of counsel and in considering statements made by the child on the videotapes when the court had already determined that the child was incompetent to testify. We agree.
An appellate court may only overrule the findings of a trial court's determination of a child custody dispute upon a finding of an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415. An abuse of discretion is more that an mere error of law but must amount to an attitude on the part of the trial court which is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. However, the trial court's discretion is limited and an appellate court will reverse a trial court's decision on discovery "when the trial court has erroneously denied or limited discovery." Mauzyv. Kelly Servs., Inc. (1996), 75 Ohio St.3d 578, citing 8 Wright, Miller Marcus, Federal Practice Procedure (2 Ed. 1994) 92, Section 2006 (holding that the trial court abused its discretion in preventing a party from obtaining discovery in the interests of expediency).
One of the purposes of the Civil Rules of Procedure is to prevent surprise, which is accomplished through the "free flow of accessible information between the parties upon request" and justifies the imposition of sanctions for failure to timely respond to parties' reasonable requests and inquiries. Jones v. Murphy (1984),12 Ohio St.3d 84; Paugh Farmer, Inc. v. Menorah Home for Jewish Aged
(1984), 15 Ohio St.3d 44. The Eighth District Court of Appeals has stated:
 [An] exercise of judicial discretion that rewards a party's willful obstruction of his opponent's good faith discovery efforts is suspect. Such an exercise of judicial discretion must be justified by a weightier interest than expediency. * * * An appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial right.
Rossman v. Rossman (1975), 47 Ohio App.2d 103, 1 O.O.3d 206. Decisions which preclude the party seeking discovery from finding those facts necessary to establish their case prejudice the party and are a violation of due process. Mann v. Smalley (May 2, 1991), Cuyahoga App. No. 58320, unreported. Trial courts abuse their discretion when they reward a party willfully noncomplying with discovery by disposing of the case without ordering the noncomplying party to provide the requested discovery. Ginn, Haase Kleinman v. Cardinal Fed. Sav. Loan Ass'n
(March 27, 1986), Cuyahoga App. No. 50453, unreported; Pry v. Health Care Retirement Corp. of Am. (Dec. 24, 1998), Crawford App. No. 3-98-11, unreported; Hattie v. Sherman (June 17, 1998), Lorain App. No. 97CA006809, unreported.
Relevant evidence may be excluded when necessary to penalize willful noncompliance or to prevent unfair surprise. Nickey v. Brown (1982),7 Ohio App.3d 32. Other possible alternatives are that the trial court may stay the proceedings or grant a continuance for the purpose of obtaining the requested discovery. Id. When one party has committed willful noncompliance or unfair surprise in failing to provide the opposing party the requested discovery, courts have excluded witnesses and documents. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83;Paugh, supra.; Weimer v. Anzevino (1997), 122 Ohio App.3d 720; Stancilv. K.S.B. Invest. Mgt. Co. (1991), 62 Ohio App.3d 765. A total failure to provide information which has obviously been requested, may itself rise to the level of willful noncompliance, warranting exclusion.Weiner, supra.
In the instant case, Robert's behavior amounted to willful noncompliance and resulted in unfair surprise to Kimberly, such that the trial court should have either excluded the evidence or continued the proceedings until Kimberly could view the videotapes. The hearing before the magistrate was held on two separate dates, September 23, 1999 and November 24, 1999, and on both dates Kimberly's counsel stated that she had requested the sixteen videotapes, and Robert's counsel had refused to allow her to view the videotapes, except for a portion of one. At the November hearing, Kimberly's counsel clearly expressed to the magistrate that she had submitted a formal written discovery request for the sixteen videotapes to Robert's counsel but his counsel had refused to allow her to view the videotapes without an approximately $200 fee for copying. (Tr. 11/24/99, p. 109-114). Although Robert's current counsel claims that Kimberly's counsel was afforded an opportunity to view the videotapes, Robert's previous counsel clearly informed the magistrate that she had only shown Kimberly's counsel one of the sixteen videotapes and demonstrated an unwillingness to informally participate in discovery. (Tr. 9/23/99, p. 4-7). As discussed above, the purpose of discovery is to allow the free flow of information between the parties in order to prepare for trial. Since Kimberly's counsel had made several requests for the videotapes, Robert's counsel's staunch refusal to permit the viewing of the videotapes without a $200 payment amounts to willful noncompliance with discovery.
Moreover, the admittance of all sixteen videotapes created an unfair surprise to Kimberly. Although Kimberly knows of the existence of the videotapes and her counsel questioned Robert as to the contents and how they were made, it is impossible for her to know what statements or pictures were on the videotapes which were given to the magistrate for viewing in making his determination. Furthermore, since the magistrate never clarified which of the sixteen videotapes he privately viewed in arriving at his decision, Kimberly still does not know nor can this Court determine what evidence was presented against her in the form of these videotapes. The videotapes should have either been excluded or the trial court should have continued the proceedings until Robert's counsel complied with the discovery request and Kimberly had an opportunity to view the videotapes.
Certainly the admittance of the videotapes prejudiced Kimberly at the hearing and affected a substantial right. The magistrate's decision clearly relies heavily on the videotapes. The magistrate determines that Kimberly and her mother are not credible witnesses because they testified that they did not notice excessive bruising on Ashley, which the videotapes showed. Additionally, the magistrate relies upon the videotape evidence of bruising, unclean clothing, and long, dirty fingernails on one date to find that Ashley is at least being neglected. Obviously, the videotapes were a deciding factor for the magistrate. If Kimberly had the opportunity to view all of the videotapes she could possibly better explain the cause of the bruising or the child's attire, show portions of the videotapes which support her position, obtain an expert witness to testify that the bruising was not a result of abuse or neglect but of normal falls and clumsiness, or examine whether the videotapes had been altered. Kimberly was denied this opportunity to defend herself against these videotapes, which were a deciding factor to the magistrate in removing custody from Kimberly. Since the videotapes were a deciding factor, the failure to require that Robert's counsel permit Kimberly's counsel to view the videotapes affected a substantial right. Thus, the admittance of the videotapes rewarded Robert's willful noncompliance and caused unfair surprise, which prejudiced Kimberly's position.
Therefore, the trial court abused its discretion by improvidently admitting into evidence the sixteen videotapes when Kimberly had been denied the opportunity to view the videotapes, despite her discovery requests. As this abuse of discretion prejudiced Kimberly's ability to defend herself against the videotapes' evidence and thereby impacted a substantial right, Kimberly's assignment of error is sustained and the judgment of the trial court is reversed and remanded for an expeditious hearing.
Since Robert Biddle has had custody of Ashley for a significant period of time, the Court hereby orders that the custody of Ashley shall remain with him until further order of the trial court. However, the trial court shall expeditiously provide a hearing wherein Kimberly Biddle is afforded full due process of law. If in the new hearing the videotapes are again admitted as evidence, the trial court should insure that the videotapes are made part of the record and denote in its decision which of the videotapes the trial court viewed in making its determination. Additionally, the trial court shall clarify whether the videotapes are utilized strictly as visual evidence or if the court considers the unsworn statements of the parties on the videotape.
 ___________________________ FREDERICK N. YOUNG, J.
BROGAN, J. and FAIN, J., concur.