[Cite as *Montalbine v. Montalbine*, 2022-Ohio-4570.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| JEFFREY J. MONTALBINE, | CASE NO. 2022-L-062 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas,<br>Domestic Relations Division |
| KIMBERLY MONTALBINE, | |
| Defendant-Appellant. | Trial Court No. 2019 DR 000652 |

**O P I N I O N**

Decided: December 19, 2022
Judgment: Affirmed

*Cory R. Hinton*, Hanahan & Hinton, LLC, 8570 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Joseph K. Palazzo*, Kurt Law Office, LLC, 4770 Beidler Road, Willoughby, OH 44094 (For Defendant-Appellant).

*Denise Cook*, 154 East Aurora Road, PMB #231, Northfield, OH 44067 (Guardian Ad Litem).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Kimberly Montalbine, appeals the trial court's judgment entry divorcing her from Appellee, Jeffrey Montalbine. Appellant contends that the magistrate's decision, which the trial court adopted, was "substantively defective" and that the judgment entry had "conflicting provisions." For the following reasons, we affirm the judgment of the Lake County Court of Common Pleas, Domestic Relations Division.

{¶2} In July 2017, Appellant and Appellee signed a pre-marital agreement in contemplation of marriage. The agreement defined separate and marital property and the parties' rights to each during the marriage and in the event of divorce. The agreement included a clause that "[i]f Jeffrey commits physical or emotional abuse against Kimberly, Jeffrey shall receive no percentage of the Marital Property whatsoever." They married in August 2017. One child was born in June 2018.

{¶3} Appellant alleges that Appellee committed domestic violence against her "some of which culminated in police calls and reports" in August 2018, March 2019, and June 2019. In July 2019, the Willoughby Municipal Court granted a temporary restraining order preventing Appellee from having any contact with Appellant and their child.

{¶4} In November 2019, Appellee filed for divorce.

{¶5} The trial court then ordered that neither party could dispose of the marital home or any other assets/property. In March 2021, the court granted Appellant's motion to immediately list the marital residence for sale.

{¶6} Appellant requested discovery from Appellee throughout the proceedings to no avail. Appellee had not complied with any of Appellant's discovery requests. In June 2021, Appellant moved to compel discovery. The court granted the motion and ordered Appellee to produce all requested documents by July 19, 2021. It is uncontested that Appellee did not comply with the order. Appellee filed an affidavit of income, expenses and property.

{¶7} The parties have stipulated to an October 2021 judgment entry from the Lake County Court of Common Pleas, which states that Appellee had been found guilty of domestic violence against Appellant.

2

Case No. 2022-L-062

{¶8} The court scheduled a divorce trial for February 9, 2022 and ordered Appellee to appear. Appellee did not appear, but his father testified on his behalf.

{¶9} On February 16, 2022, the magistrate issued her decision. On March 7, 2022, the court adopted the magistrate's decision.

{¶10} The judgment entry provided that proceeds from the sale of the marital residence "shall be divided as follows: the first $88,818.00 shall be paid to" Appellee and any further proceeds would be paid to Appellant.[1]

{¶11} The court ordered Appellee to pay child support in the amount of $80/month starting March 2022. The court also ordered that child support would be modified to $139.10 per month starting May 1, 2022, based on Appellee's "future income" after his anticipated release from jail on that date. The court did not order spousal support.

{¶12} Appellant did not timely object to the magistrate's decision, and on June 30, 2022, the court granted the divorce.

{¶13} Appellant timely appeals and raises two assignments of error.

{¶14} First assignment of error: "The trial court committed both plain error and an abuse of discretion when it adopted the Magistrate's Decision, which was substantively defective."

{¶15} Under her first assignment, Appellant argues several reasons why the magistrate's decision was defective. We will discuss each argument separately.

{¶16} Appellant concedes that she did not timely object to the magistrate's decision, leaving plain error as our standard of review.

---

1.This division was based upon Appellee's father having given Appellee a gift of $88,818.00 in March 2019 for the down-payment on the home; the court declared that gift to be separate property.

3

**{¶17}** When a party has failed to object to an issue at the trial court, the argument is waived for purposes of appeal unless the party demonstrates plain error. *State v. Gotel*, 11th Dist. Lake No. 2006–L–015, 2007–Ohio–888, ¶ 23. Appellate courts may consider an argument on appeal if the error falls within the plain error doctrine. *Id.* Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph two and three of the syllabus.

**{¶18}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 375, 721 N.E.2d 47 (2000), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise" and should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, *supra,* at paragraph two and three of the syllabus.

**{¶19}** There are sound reasons underlying a restrained application of the plain error doctrine. "Any other rule would relieve counsel from any duty or responsibility to the court, and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel, which enjoins upon counsel the duty to exercise diligence and to aid * * * the court * * *." *State v. Driscoll*, 106 Ohio St. 33, 39, 138 N.E. 376, 378 (1922). "To

4

Case No. 2022-L-062

exercise the right freely would undermine and impair the administration of justice and detract from the advantages derived from orderly rules of procedure." *Id.* Thus, it is that Appellant has a heavy burden to prove that the trial court committed plain error. With that background, we proceed to consider Appellant's arguments.

**Discovery:**

{¶20} Appellant first asserts that the magistrate's decision was defective because Appellant never received discovery from Appellee, despite the court's ordering him to comply with discovery requests.

{¶21} Civ.R. 37(B)(1) provides that if a party fails to comply with an order to provide discovery, "the court *may* issue further just orders." (Emphasis added.) The rule does not require a court to enforce compliance with an order to produce discovery.

{¶22} An appellate court will reverse a decision if a trial court has extinguished a party's right to discovery, if the trial court's decision is improvident, and if it affects the discovering party's substantial rights. *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 110, 352 N.E.2d 149. The goal of modern discovery procedures should be to make civil trials "'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Rossman* at 107, quoting *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077; *Hickman v. Taylor* (1947), 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451.

{¶23} Appellant cites to *Rossman*, *supra*, for the proposition that "proceeding without discovery is inherently prejudicial, if not just blatantly unfair." *Rossman* is distinguishable. In *Rossman*, the Eighth District Court of Appeals held that the "trial judge's refusal to enforce his own order compelling discovery * * * denied the plaintiff the

5

pretrial opportunity to fully prepare her arguments on the fundamental issue of the defendant's earning capacity" because "Joseph Rossman's earning capacity was a complex issue." *Id.* at 108.

**{¶24}** Here, Appellee's earning capacity was not a complex issue because he was incarcerated and had been unemployed for years when the magistrate calculated child support. Appellee also filed an affidavit of income, expenses, and property to provide the court with his assets and earning capacity. Appellee's failure to produce discovery did not affect Appellant's substantial rights. Appellant does not provide any support in her brief that Appellee's failure to produce discovery prejudiced her. Civ.R. 37(B)(1) is permissive and does not require a court to enforce or sanction a party for failing to comply with a court order to produce discovery. Under Civ.R. 37(B), Appellant could have moved the trial court to sanction Appellee for not producing discovery, but she did not.

**{¶25}** Appellant failed to demonstrate that but for the error (the court's failure to enforce its court order on discovery), the outcome of the trial clearly would have been otherwise.

**{¶26}** Appellant's argument as to discovery does not support her first assignment of error.

**Child Support:**

**{¶27}** Appellant next asserts that the trial court erred in calculating child support.

**{¶28}** Appellate courts review child support matters for abuse of discretion. *Long v. Long*, 162 Ohio App.3d 422, 2005-Ohio-4052, ¶ 8 (3rd Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

6

Case No. 2022-L-062

**{¶29}** R.C. 3119.05(J) provides: "When a court or agency calculates the income of a parent, it shall * * * not impute income to that parent if the parent is incarcerated."

**{¶30}** Incarceration does not relieve a parent of the legal duty to support his child. *Rhodes v. Rhodes*, 7th Dist. Belmont No. 00 BA 34, 2001 WL 1199877, *3 (Sep.25, 2001).

**{¶31}** "The calculation of child support is governed by R.C. Chapter 3119. Pursuant to R.C. 3119.02, in any action in which a court child support order is modified, a court or child support enforcement agency must calculate the amount of a child support obligation according to the schedules and worksheets provided in R.C. 3119.02 through R.C. 3119.24." *Rundo v. Rundo*, 11th Dist. Geauga No.2013–G–3134, 2013–Ohio–4305, ¶ 16.

**{¶32}** Appellant contends that the "Judgment Entry's calculation of post-release income is both arbitrary and capricious" because Appellee has the capacity to earn more than the amount the court calculated.

**{¶33}** The trial court properly calculated child support according to the schedules and worksheets provided by statue and attached those documents to the judgment entry. The trial court did not abuse its discretion in calculating future income based on Appellee's future earning capacity, which is considerably less than what he was earning before incarceration. Appellee is no longer incarcerated, but has had trouble finding employment. If Appellant finds that the child support order does not reflect Appellee's current earnings and wishes to modify it, she may move the trial court to modify the child support order under R.C. 3119.79. "An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called to the attention of the trial court at a time when such error could have been avoided or corrected

7

by the trial court." *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210 436 N.E.2d 1001. The divorce was granted in June 2022, two months after Appellee had been released from jail. Appellant could have raised the issue then.

**{¶34}** Appellant fails to establish that the trial court committed plain error in calculating child support. She may also move the trial court to modify the order in the future if she wishes (and if she has grounds to do so.)

**{¶35}** Appellant's argument as to child support does not support her first assignment of error.

**Property Division:**

**{¶36}** Appellant asserts that the trial court's property designations and divisions were incorrect as to: (1) Appellee's Republic Airlines 401(k); and (2) the proceeds from selling the marital residence.

**{¶37}** We first address Appellant's argument regarding Appellee's 401(k).

**{¶38}** It is well settled in Ohio that public policy allows the enforcement of pre-marital agreements. *Gross v. Gross* (1984), 11 Ohio St.3d 99, 464 N.E.2d 500, paragraph one of the syllabus.

**{¶39}** Neither party contests the pre-marital agreement's validity and enforceability.

**{¶40}** The pre-marital agreement provides that "[t]he parties agree between themselves that any and all property designated as Separate Property shall be and shall forever remain the Separate Property of that party * * *." The agreement defines separate property as "[p]roperty owned before the marriage as set forth on Exhibits A and B and all interest, profits, dividends, bonuses, growth, passive and active appreciation and

8

proceeds" from that property. The agreement specifically refers to separate property as including: "all premarital assets as set forth in Exhibit A and B, attached hereto, and property traceable to those assets * * *." The agreement's definition of marital property specifically excludes all property set forth in Exhibits A and B. Exhibit A lists Appellee's Republic Airlines 401(k) as a premarital asset, making it separate property. The trial court did not commit plain error in awarding Appellee the full 401(k).

{¶41} We next consider the proceeds from selling the marital residence. Appellant argues that under the pre-marital agreement, she should have received the full profits from selling the residence and Appellant should not have received $88,818.00 from the sale (which represents the gift Appellee's father gave him for the down-payment.)

{¶42} Under the pre-marital agreement, separate property included "third-party gifts received by one party during the marriage." At trial, Appellee's father testified that, and produced a gift letter to confirm that, the amount gifted for the residence's down-payment in March 2019 was only to Appellee. Pursuant to the pre-marital agreement, Appellee's father's gift to Appellee during the marriage is considered separate property.

{¶43} Appellant argues that the monetary gift became marital property when Appellee purchased the marital residence. Under R.C. 3105.171(A)(6)(b), "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." The Sixth District Court of Appeals has held that R.C. 3105.171(A)(6)(b) applies when a monetary gift is given to one party as a down-payment for a marital home if the down-payment is traceable as a gift. *Garritano v. Pacella*, 6th Dist. Lucas No. L-07-1171, 2009-Ohio-2928, ¶ 76. Appellee's father testified and provided evidence that

9

traces the monetary gift to him. The gift belongs to Appellee as his separate property and the court did not commit plain error in awarding him $88,818.00 of the residence's proceeds.

{¶44} Appellant's arguments as to property division do not support her first assignment of error.

**Concealment and non-disclosure of assets:**

{¶45} Appellant also contends that "[t]he Judgment Entry failed to take into account Appellee's willful concealment and nondisclosure of assets and discovery."

{¶46} As noted above, the trial court was not required to compel Appellee to comply with the court's discovery order.

{¶47} R.C. 3105.171(E)(4) provides: "The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property * * * If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶48} Appellant asserts that Appellee concealed and failed to disclose assets, debts, and income and that (under R.C. 3105.171(E)(4)), the court should have "awarded substantially more property to Appellant" for Appellee's "financial misconduct." Appellant fails to describe what assets, debts, or income Appellee has supposedly concealed. Either way, R.C. 3105.171(E)(4) is permissive and does not require a court to compensate a party with a distributive award.

{¶49} Appellant's fourth argument does not support her first assignment of error.

10

Case No. 2022-L-062

**Spousal Support:**

{¶50} Appellant argues that the trial court erred by not awarding spousal support and relinquishing jurisdiction on the matter.

{¶51} "Though generally governed by principles of contract law, a strict application of the law of contracts is not appropriate given the specialized nature of prenuptial agreements." *Gross v. Gross* (1984), 11 Ohio St.3d 99, 107, 464 N.E.2d 500, paragraph two of the syllabus. "When reviewing the provisions of prenuptial agreement relative to spousal support, the court must apply 'a further standard of review [beyond the three elements required for enforceability] * * *—one of conscionability of the provisions at the time of the divorce[.]'" *Id.* at 109. "Because the provisions related to spousal support have the ability to become invalid based on a change in circumstances of one of the parties to the marriage, a court must review the circumstances of the parties as they exist at the time of the divorce to determine if they remain conscionable." *Id.*

{¶52} "A determination of whether a written contract is unconscionable is an issue of law which a court reviews de novo." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 884 N.E.2d 12, 2008–Ohio–938, at ¶ 37; *Brunke v. Ohio State Home Services, Inc.*, 9th Dist. No. 08CA009320, 2008–Ohio–5394, at ¶ 8. "When a trial court makes factual findings, however, supporting its determination that a contract is or is not unconscionable, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference." *Taylor Bldg. Corp.* at ¶ 38.

11

Case No. 2022-L-062

**{¶53}** The pre-marital agreement provides that "Jeffrey shall pay three (3) years of spousal support in an amount to be determined based on the Parties' respective income at the time of divorce."

**{¶54}** In its Findings of Fact and Conclusions of Law, which the trial court adopted, the magistrate found that "there shall be no exchange of spousal support between the parties * * *." The magistrate explained that Appellee would not be required to pay spousal support because he had been incarcerated and was unemployed.

**{¶55}** The trial court did not err in refraining from ordering spousal support. Giving great deference to the trial court's findings, there has been a material change in circumstances since signing the pre-marital agreement that would render the term unconscionable. When the parties signed the agreement in 2017, Appellee was employed as a commercial airline pilot earning approximately $100,000.00 a year. Since then, he has lost his pilot's license due to legal troubles, was unable to find employment, and had been incarcerated for several months until April 2022.

**{¶56}** The trial court's findings support deviating from the pre-marital agreement's terms to not order spousal support. The court did not commit plain error.

**{¶57}** Appellant also asserts that the court erred by relinquishing jurisdiction on spousal support.

**{¶58}** "The decision whether to retain jurisdiction to modify a spousal support award is within the trial court's discretion." *Ricketts v. Ricketts,* 109 Ohio App.3d 746, 755, 673 N.E.2d 156 (12th Dist. 1996), citing *Johnson v. Johnson*, 88 Ohio App.3d 329, 331, 623 N.E.2d 1294 (5th Dist. 1993). "Divorce decrees should possess some degree of 'certainty and finality.'" *Ressler v. Ressler* (1985), 17 Ohio St.3d 17, 18, 476 N.E.2d

12

1032. "Thus, in order to prevent parties from perpetually seeking to modify an order of spousal support, a trial court may, within its discretion, refuse to retain jurisdiction on the issue of spousal support." *Shehab v. Shehab*, 11th Dist. No. 2002-P-0122, 2004-Ohio-5460, at ¶ 16.

**{¶59}** The trial court, in its discretion, ordered that it would not retain jurisdiction on spousal support. The trial court did not commit plain error in doing so.

**{¶60}** Appellant's arguments as to spousal support do not support her first assignment of error.

**The pre-marital agreement:**

**{¶61}** Appellant argues that: "The Judgment Entry's grounds for divorce were contra the parties' stipulations and failed to consider the parties prenuptial agreement." Appellant specifically contends that the court did not order Appellee to forfeit his share of the marital estate. Appellant's only basis for this contention is the contract's language requiring Appellee to forfeit the entire marital estate if he committed domestic violence, which he did. But, Appellant does not identify any assets to which she is entitled that she has not yet received. To the extent that Appellant may be referring to assets contained within her earlier arguments, we have addressed each thoroughly. Otherwise, her argument is based on speculation that there may be other assets to which she is entitled.

**{¶62}** Appellant's first assignment of error is without merit.

**{¶63}** Second assignment of error: "The trial court committed both plain error and an abuse of discretion when it issued a defective Judgment Entry of Divorce that had conflicting provisions."

13

Case No. 2022-L-062

**{¶64}** Appellant asserts that "it is important to revisit the docket and procedural posture of this case," in which the court ordered Appellant to "prepare and circulate" the judgment entry "consistent with this decision and the parties' stipulations" and "[s]aid entry shall further provide that each party has in his or her possession the property to which he or she is entitled, and there is no property to be divided between them." Appellant added a footnote in the judgment entry explaining that these were conflicting provisions because, she claims, according to their stipulations, each party did not have the property to which each is entitled. Appellant moved for a hearing on the "conflicting provisions," but the court did not grant the motion.

**{¶65}** Appellant's argument is not that the language was "conflicting," but that the language was incorrect because (as she states in her brief) "each party did *not* have everything to which he or she was entitled to." Notwithstanding that the court's order may have been incorrect, the final judgment entry did not include the alleged "conflicting" language. It states that Appellee still has "additional items" to receive from the marital residence and specifies what they are. In Appellant's footnote on the judgment entry, she explained leaving the language out and stated that adding the language "would be in direct conflict with the original Magistrate's Decision * * *." "The rule is well established in this state that a court of record speaks only through its journal." *Schenley v. Kauth*, 160 Ohio St. 109, 111, 113 N.E.2d 625 (1953). The judgment entry did not include the language. Appellant fails to demonstrate that she was prejudiced by the language or that the court committed plain error in ordering her to include the language (which she did not include).

**{¶66}** Appellant's second assignment of error is without merit.

14

Case No. 2022-L-062

{¶67} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

MATT LYNCH, J.,

FREDERICK D. NELSON, J., Retired, Tenth Appellate District, sitting by assignment,

concur.