[Cite as *Teays Valley Local School Dist. Bd. of Edn. v. Struckman*, 2023-Ohio-244.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

TEAYS VALLEY LOCAL SCHOOL   :
 DISTRICT BOARD OF
 EDUCATION,   :

Plaintiff-Appellee,   :   Case No.  21CA7

    v.   :

MICHAEL STRUCKMAN,   :   DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.   :

_____

APPEARANCES:

Andrew C. Clark and Richard T. Ricketts, Pickerington, Ohio, for appellant.

Nelson Reid and Sue W. Yount, Columbus, Ohio, for appellee.

_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 1-25-23
ABELE, J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court summary judgment in favor of Teays Valley Local School District Board of Education, plaintiff below and appellee herein. Michael Struckman, defendant below and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION BY
REFUSING TO PERMIT APPELLANT TO PURSUE

> DISCOVERY IN ACCORDANCE WITH THE CIVIL
> RULES."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ABUSED ITS DISCRETION BY
> STRIKING APPELLANT'S AMENDED ANSWER AND
> COUNTERCLAIMS WHICH WAS FILED WITH CONSENT
> OF OPPOSING COUNSEL PURSUANT TO CIVIL RULE
> 15(A) AND SUBSEQUENTLY DENYING APPELLANT'S
> MOTION FOR LEAVE TO AMEND."
>
> THIRD ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED IN GRANTING SUMMARY
> JUDGMENT AS TO LIABILITY WHERE THE
> PROVISIONS OF THE CONTRACT ENVISIONED THAT
> DEFENDANT WOULD BE PERMITTED TO GROW CROPS
> ON THE PROPERTY DURING THE TIME PERIOD
> RELEVANT TO THIS CASE."

In 2004, appellant agreed to sell approximately 70 acres of real estate to appellee.[1] One provision in the contract gave appellant the right to continue "Farming Activities on any part of the Real Estate purchased by Buyer until Buyer commences construction on any such portion of the Real Estate or otherwise must occupy said portion of the Real Estate in connection with its intended use thereof."

---

[1] The underlying facts can be found in our previous decisions concerning the litigation between the parties: *Struckman v. Bd. of Edn. of Teays Valley Loc. Sch. Dist.*, 2019-Ohio-115, 128 N.E.3d 709 (4th Dist.) (*Struckman II*), and *Struckman v. Bd. of Edn. of Teays Valley Loc. Sch. Dist.*, 4th Dist. Pickaway No. 16CA10, 2017-Ohio-1177 (*Struckman I*).

{¶2} In July 2015, Teays Valley Local School District Superintendent Robin Halley sent a letter to appellant to inform him that appellee intended to occupy the property and appellant's farming rights would terminate at the end of the 2015 farming season. Halley's letter stated that appellee's "plans include the construction of a small facility on the site in conjunction with its occupancy and use of the property for the District's student FFA organization and other potential school-related or extracurricular functions."

{¶3} In March 2016, appellant filed a complaint against appellee for breach of contract, specific performance, declaratory and injunctive relief, and willful, wanton and knowing breach of contract. Appellant asserted that he agreed to sell his property to appellee (at a generous discount) based on the understanding that (1) appellee would use the property as a school site, and (2) appellant would have the right to continue to farm the property until appellee developed a school on the property. Appellant argued that appellee's use of the property for any purpose other than a school site constitutes a breach of the real estate purchase contract.

{¶4} In response, appellee filed a Civ.R. 12(B)(6) motion to dismiss the complaint for failure to state a claim upon which

relief could be granted.  Appellee argued that the contract did not require it to build a school on the property.

{¶5}  The trial court agreed with appellee that the purchase contract did not require appellee to build a school on the property and granted the motion to dismiss the complaint.  The court found its decision regarding the contract language dispositive of the other arguments.  Appellant appealed the trial court's judgment.

{¶6}  Meanwhile, appellee filed the complaint that is the subject of the present appeal.  Appellee's complaint alleged that, based upon the purchase contract and the previous litigation, appellant did not have any right to continued use of the property.  Appellee asked the court to eject appellant from the property and to enter a permanent injunction to enjoin him from entering, using, or possessing the property.  Appellee also requested that the court award it the planted crops and to find that appellant engaged in a trespass.

{¶7}  On July 11, 2016, appellant filed an answer and counterclaims.  In his counterclaims, appellant asserted that appellee breached the purchase contract and requested specific performance of appellee's obligations under the contract.  Appellant asked the trial court to order appellee "to cease and

desist any attempt to take possession of the Real Estate or restrict in any manner [appellant]'s use of the Real Estate for farming purposes as provided for in the Purchase Contract."  He also alleged "willful, wanton and knowing intended breach" of contract.

{¶8}  On March 27, 2017, this Court affirmed the trial court's judgment that dismissed appellant's complaint in the initial case (*Struckman I*).  In doing so, we rejected appellant's argument that the purchase contract's language was ambiguous so as to permit appellant to introduce parol evidence that the parties intended that appellee would use the property to build a school.  Instead, we concluded that the relevant contract language is unambiguous and did not require appellee to build a school on the property.  The relevant contract language states:

> The Contract shall not affect the current right to use the Real Estate for Farming Activities prior to closing.  Furthermore, Seller shall be entitled to without charge from Buyer continue its Farming Activities on any part of the Real Estate purchased by Buyer until Buyer commences construction on any such portion of the Real Estate or otherwise must occupy said portion of the Real Estate in connection with its intended use thereof.

{¶9}  We did not agree with appellant that this language, or any other language in the contract, showed that appellee

promised to build a school on the property or that appellee agreed it would terminate appellant's farming rights only if appellee started to build a new school. Rather, we concluded that the contract's plain language states that appellant retained the right to farm the property until appellee (1) started construction on any portion of the property, or (2) "otherwise must occupy said portion of the property in connection with 'its intended use thereof.'" *Id.* at ¶ 26. We determined that the language provides that appellant retained the right to farm the property "until a certain time when [appellee] sought to use the property [it] purchased." *Id.* We interpreted the phrase "its intended use" to mean that appellee "could not arbitrarily occupy the property just to terminate [appellant]'s farming rights. Instead, [appellee] must have occupied the property with the intent to use it for some envisioned purpose." *Id.*

{¶10} We additionally pointed out that the contract's integration clause states that the contract "embodies the entire agreement between Seller and Buyer." *Id.* at ¶ 25.

{¶11} Next, we recognized that the superintendent's July 2015 letter gave appellant notice that appellee intended to occupy and use the property. We observed that appellant's

"entire complaint [was] based upon the assertion that [appellee]'s notice breached the terms of the purchase contract because [appellee] did not intend to use [the property] as a site for a new school." *Id.* at ¶ 27. We therefore concluded that, because the contract did not require appellee to build a school on the property, appellant's complaint failed to set forth a claim upon which relief could be granted. In sum, we concluded that the "purchase contract presents an insuperable bar to relief on [appellant]'s breach of contract claims." *Id.* Appellant subsequently filed a notice of appeal with the Ohio Supreme Court.

{¶12} Appellant also filed a Civ.R. 60(B) motion for relief from judgment and argued that appellee's notice to occupy the property was invalid for the failure to comply with the Ohio Sunshine Law, R.C. 121.12.[2] Appellant claimed that (1) the board did not place the issue on the agenda of a public meeting, and (2) new evidence showed that the parties intended that appellee would use the property as a school site. On November 8, 2017,

---

[2] The Ohio Supreme Court has referred to this law as the "Open Meetings Act." *State ex rel. More Bratenahl v. Village of Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, 136 N.E.3d 447, ¶ 8.

appellee filed a motion to stay discovery, which the trial court later granted.

{¶13} On December 20, 2017, the Ohio Supreme Court declined to accept appellant's appeal of our decision that affirmed the trial court's decision that granted appellee's motion to dismiss. 151 Ohio St.3d 1474, 2017-Ohio-9111, 87 N.E.3d 1271.

{¶14} Subsequently, the trial court denied appellant's Civ.R. 60(B) motion and determined that laches barred appellant's Sunshine Law allegation and the law-of-the-case doctrine precluded it from considering appellant's claim regarding the meaning of the purchase contract. Appellant appealed this decision.

{¶15} On January 9, 2019, we affirmed the trial court's decision to deny appellant's Civ.R. 60(B) motion. We determined that although appellant did not timely file his motion as it related to the Sunshine Law allegation, appellant could have discovered the basis for the claim through a "pre-suit public-records request." *Id.* at ¶ 24. We also concluded that the law-of-the-case doctrine prevents appellant from relitigating his claim that the purchase contract's phrase, "its intend use," is ambiguous so as to permit appellant to introduce parol evidence

to establish that the parties intended that appellee must use the property as a school site.

{¶16} Following our remand, the trial court's staff attorney contacted the parties via email to ask how they intended to proceed, and the court set the matter for a status conference. In response to the staff attorney's email, appellant's counsel outlined a proposed case schedule as follows:

| Appellee's deadline to file amended pleading | March 1, 2019 |
|---|---|
| Appellant's deadline to file an answer to appellee's amended pleadings and/or amend its pleadings | March 21, 2019 |
| Initial disclosure of witnesses | April 26, 2019 |
| Supplemental disclosure of witnesses | August 16, 2019 |
| Dispositive motion deadline | November 15, 2019 |
| Discovery cutoff | December 31, 2019 |
| Trial | February/March 2020 |

{¶17} Appellee's counsel responded:

> We are fine with the proposed case schedule with the exception of the discovery cut-off and dispositive motion deadline. I would prefer that discovery close before the dispositive motion deadline and suggest that we simpl[y] flip those dates.

{¶18} Appellant's counsel replied that the "revision is fine" and set forth a "new proposed schedule" that changed the dates for discovery and dispositive motions.

{¶19} On March 18, 2019, the trial court issued a scheduling order that denied appellee's motion for leave to amend its 2016 complaint, ordered dispositive motions to be filed by July 8, 2019, and set the matter for a jury trial. Notably, the scheduling order did not include dates for either party to amend the pleadings.

{¶20} On March 21, 2019, appellant filed a first amended answer to appellee's complaint and first amended counterclaims. Appellant, however, did not ask the court for leave to file the complaint. Instead, appellant asserted that appellee provided written consent to the amendment. Appellant attached the series of emails between the court's staff attorney and the parties that discussed a proposed case schedule and contended that in those emails, appellee provided written consent to appellant's amended answer and counterclaims. The amended counterclaims contained the following claims for relief: (1) breach of contract; (2) rescission for material mistake; (3) breach of conditional gift; (4) failure of meeting of the minds; (5)

reformation of purchase contract; and (6) Sunshine Law violation.

{¶21} Appellee subsequently filed a motion to strike appellant's amended answer and counterclaims.  Appellee (1) disputed appellant's claim that it had consented to appellant's amended pleading when it agreed in an email to a proposed case schedule, (2) emphasized that the email discussions involved only a proposed schedule that set forth dates for both parties to amend their pleadings, and (3) noted that, after the March 18, 2019 status conference, the trial court set its own schedule.  The court's scheduling order denied appellee's pending motion to amend its complaint and did not include a date for appellant to file an amended answer and counterclaims. Appellee stated that the parties had discussed a proposed schedule only and that the court's own case scheduling order took precedence.

{¶22} On April 17, 2019, the trial court determined that, because appellant filed his amended answer and counterclaims without leave of court and without appellee's consent, the amended answer and counterclaims must be stricken from the record.

{¶23} On April 19, 2019, appellant filed a memorandum contra appellee's motion to strike and a motion for leave to file his amended pleading instanter and a motion for reconsideration. Additionally, appellant filed a notice of appeal from the court's April 17, 2019 judgment striking his amended pleading from the record.

{¶24} On July 8, 2019, appellee requested summary judgment and asserted that the doctrine of res judicata prevents continued litigation.  Appellee further argued that because the trial court and this Court already determined that appellant does not have any rights to the property, no genuine issues of material fact remain.  Thus, appellee requested (1) a judgment declaring that it properly terminated appellant's farming rights as of October 2015 and that appellant's continued use of the property constitutes a trespass; (2) a judgment ejecting appellant from the property; (3) a judgment permanently enjoining appellant from entering, using, or otherwise possessing the property; and (4) compensatory damages, disgorgement of profits earned from the property, punitive damages, and attorneys' fees and expenses.

{¶25} On July 22, 2019, appellant filed a motion to strike appellee's summary judgment motion and asserted that his notice

of appeal divested the trial court of jurisdiction. He also filed a motion to continue the matter after the appeal is resolved so that he can have additional time, under Civ.R. 56(F), to conduct discovery. Appellant also filed a memorandum contra and contended that appellee did not satisfy its initial Civ.R. 56(C) burden and issues remain regarding whether appellant has a right to farm or use the property and whether appellee's use of the property is legitimate. Appellant argued that "[n]o court has determined, or even reviewed, the issue of whether [appellee]'s clandestine plan to needlessly occupy the Property was legally sufficient under the Contract or if it was an impermissibly arbitrary plan concocted 'just to terminate [appellant]'s farming rights.'"

{¶26} After this Court dismissed appellant's appeal from the trial court's decision that struck his amended answer and counterclaims, the trial court held a hearing to consider the outstanding matters. First, the court allowed appellant's counsel to address his first amended answer and counterclaims. Counsel stated that in January 2019, he received a notice from the court that asked the parties to agree to a proposed scheduling order and to submit it to the court. Counsel sent an email to appellee's counsel with proposed dates for filing

certain documents and this email included dates to submit amended pleadings. Appellee's counsel responded that she would change the dates to complete discovery and to file dispositive motions. Appellant's counsel then "agreed to that change and we submitted that proposed order." Appellant's counsel stated that he "interpreted [appellee's counsel's] consent in writing to that deadline of March 21st for [appellant] to file its amended pleadings to be written consent to the pleadings, and that was the basis for the filing of the motion at first."

**{¶27}** Appellee's counsel responded that she did not consent to appellant's filing of an amended answer and counterclaim, but instead, stated that the parties "exchanged emails regarding a proposed case schedule, which is entirely procedural in nature." She stated that "the first time [that she] saw the proposed amended answer and counterclaim was after it was filed," that she "did not consent to the substance of it" and "did not and do[es] not consent to the filing of their amended answer and counterclaim."

**{¶28}** On December 23, 2019, the trial court denied appellant's motion for leave to file an amended answer and counterclaims. The court rejected appellant's claim that appellee's counsel consented to the filing an amended complaint

when counsel agreed, via email, to a case scheduling order that appellant's counsel had proposed.  Instead, the court stated that the emails concerned "scheduling negotiation * * * in preparation for a pre-trial conference with [the trial] Court, in which [the trial] Court disagreed with the proposed schedules and imposed its own schedule."  The court thus denied appellant's motion for leave to file an amended answer and counterclaims.  The court then gave both parties additional time to provide any further responses to appellee's pending summary judgment motion.

{¶29} On January 10, 2020, appellant filed a supplemental memorandum in opposition to appellee's summary judgment motion and asserted that genuine issues of material fact remained for resolution at trial regarding (1) whether appellee's use of the property for a storage shed is arbitrary and solely to terminate appellant's farming rights, (2) whether appellee's efforts to terminate appellant's farming rights violated the Ohio Sunshine Law, and (3) whether appellee had a legal basis to send a 2015 termination notice "where documentation shows that [appellee] did not concoct its 'intended use' for the property until at least March 2016."

{¶30} On March 26, 2020, the trial court granted appellee summary judgment. The court first determined that res judicata barred appellant's counterclaims. The court next considered whether appellee is entitled to summary judgment regarding the claims raised in its complaint and determined that no genuine issues of material fact remained regarding whether appellant trespassed on the property. The court noted that the previous decisions established that appellant did not have any right to the property or any right to continue farming any portion of the property and, thus, his continued presence on the property constituted a trespass. The court declared that appellant does not have any rights to the property and that he may not enter, use, or possess the property. With that, the court set the matter for a damages hearing.

{¶31} On April 9, 2021, the parties entered into a "stipulated final judgment entry." In this entry, the parties agreed to divide the $34,173.14 currently held by the receiver as follows: (1) $20,000 to appellant; and (2) the remaining balance to appellee. This appeal followed.

I

{¶32} In his first assignment of error, appellant asserts that the trial court abused its discretion by denying his

request to conduct discovery. Appellant contends that the trial court's decision prevented him from fully preparing his case for litigation.

{¶33} Appellee argues that the trial court did not abuse its discretion by staying discovery until the court ruled on appellee's summary judgment motion because that decision was perfectly rational because appellee sought summary judgment based upon the doctrine of res judicata. Appellee claims that any discovery that appellant would have pursued would not have helped him overcome the res-judicata bar and would have been completely unnecessary.

{¶34} "Appellate courts generally review a discovery dispute under an abuse-of-discretion standard." *Torres Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, 161 N.E.3d 546, ¶ 22. Accordingly, a decision to grant or deny a stay of discovery rests within the sound discretion of the trial court. *Alford v. Arbors at Gallipolis*, 2018-Ohio-4653, 123 N.E.3d 305, ¶ 70 (4th Dist.). Moreover, a reviewing court will not overturn a trial court's ruling regarding a Civ.R. 56(F)[3] continuance

---

[3] Civ.R. 56(F) provides as follows:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party

PICKAWAY, 21CA7

unless the trial court abused its discretion. *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 305, 2003-Ohio-861, 784 N.E.2d 99, ¶ 31, citing *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996); *Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336, ¶ 86 (4th Dist.); *Citizens Bank of Logan v. Hines*, 4th Dist. Athens No. 12CA5, 2013-Ohio-690, ¶ 8. "'[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a '"sound reasoning process."'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597

---

cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

(1990). The abuse of discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34.

**{¶35}** We further observe, however, that a trial court's discretion "is not without limits." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). As the *Mauzy* court explained:

> Although unusual, appellate courts will reverse a discovery order "when the trial court has erroneously denied or limited discovery." 8 Wright, Miller & Marcus, Federal Practice & Procedure (2 Ed.1994) 92, Section 2006. Thus, "[a]n appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights." *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 110, 1 O.O.3d 206, 210, 352 N.E.2d 149, 153–154.

*Id.* A trial court ordinarily abuses its discretion by limiting discovery when "[t]he record discloses that further discovery was warranted in order to fully prepare to litigate" the pertinent legal issues. *Id.*

**{¶36}** On the other hand, "'[a] trial court acts within its discretion when it grants a stay of discovery pending the resolution of a dispositive motion.'" *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 21, quoting *Thomson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist.

No. 09AP-782, 2010-Ohio-416, ¶ 32. Furthermore, a trial court does not abuse its discretion by staying discovery or by "overruling a Civ.R. 56(F) motion to continue when further discovery would prove fruitless." *Bender v. Logan*, supra, at ¶ 88, citing *Fifth Third Mortgage Co. v. Rankin*, 4th Dist. Pickaway No. 10CA45, 2011-Ohio-2757, ¶ 33; *Battle v. Favreau*, 5th Dist. Morgan No. 15AP0007, 2015-Ohio-5106, ¶ 17, quoting *Elliott v. Perez*, 751 F.2d 1472, 1478 (C.A.5 1985) ("'discovery should not be allowed'" until threshold issue resolved). Discovery ordinarily is fruitless when additional time would not provide any benefit. *Davis v. Eachus*, 4th Dist. Pike No. 04CA725, 2004-Ohio-5720, ¶ 41.

**{¶37}** In *Davis*, for example, we determined that when res judicata is a dispositive issue, then giving a party additional time to conduct discovery will not provide any benefit. We explained:

> in light of our conclusion that the non-attorney defendants are entitled to dismissal on res judicata grounds, we fail to see how the appellant could have suffered any prejudice arising from the trial court's failure to provide the appellant with additional time to conduct discovery.

*Id.*

**{¶38}** Other courts likewise have determined that when res judicata is a dispositive issue or when a motion raises a purely

legal issue, then discovery generally will be fruitless. *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, 853 N.E.2d 657, ¶ 10 (additional discovery not necessary to resolve summary judgment motion that involved "purely legal arguments"); *Dehlendorf v. Ritchey*, 10th Dist. Franklin No. 12AP-87, 2012-Ohio-5193, ¶ 23 (court did not abuse discretion by staying discovery when appellant did not establish that additional discovery "could lead to admissible evidence related to the issue of collateral estoppel").

**{¶39}** In the case sub judice, appellee asserted that it is entitled to summary judgment based upon the doctrine of res judicata. Appellee's motion involved a purely legal issue – whether the prior proceedings between the parties demonstrated that res judicata precluded appellant's counterclaims and established appellee's entitlement to relief. Here, additional discovery would not have helped appellant to illustrate that the doctrine of res judicata is inapplicable. The trial court, therefore, did not abuse its discretion by staying discovery or by overruling appellant's Civ.R. 56(F) motion for additional time to conduct discovery.

**{¶40}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

**{¶41}** In his second assignment of error, appellant asserts that the trial court abused its discretion by striking appellant's amended answer and counterclaims. Appellant first argues that opposing counsel consented to the amendment via email and that this email constitutes written consent under Civ.R. 15(A). Appellant claims that the question regarding a party's consent to an amended pleading under Civ.R. 15(A) is a question of law for this Court to decide, but if this court determines that the email did not constitute written consent, we should review the trial court's decision to deny his motion for leave to amend for an abuse of discretion.

**{¶42}** Appellant further asserts that the trial court prematurely entered its decision without affording appellant an opportunity to respond. Appellant also challenges the lack of analysis contained in the trial court's decision.

**{¶43}** Appellee disputes appellant's assertion that the question regarding a party's written consent is a question of law for this Court to decide. Instead, appellee argues that whether a party consented to a Civ.R. 15(A) amendment is a

factual matter reserved for the trial court and the issue is subject to a manifest weight of the evidence standard.

**{¶44}** Appellee also asserts that appellant had an adequate opportunity to be heard regarding the issue of written consent. Appellee claims that the trial court ultimately considered all of appellant's arguments.

**{¶45}** Appellee additionally argues that the trial court's denial of appellant's motion for leave to amend his answer and counterclaims did not constitute an abuse of discretion. Appellee contends that res judicata barred the counterclaims that appellant sought to amend and, as a consequence, rendered any amendments futile. Appellee notes that appellant's motion for leave to amend relied upon the same words that this Court interpreted in our March 27, 2017 decision, i.e., "its intended use." Appellee thus argues that appellant's amended counterclaims constitute an attempt to relitigate an issue that this Court previously decided.

A

**{¶46}** Initially, we note that the "ultimate decision to grant leave to amend a pleading is vested in the sound discretion of the trial court and its decision on such matters will not be reversed absent a showing of an abuse of that

discretion." *Martin v. Wandling*, 2016-Ohio-3032, 65 N.E.3d 103, ¶ 34 (4th Dist.); *Rose v. Cochran*, 4th Dist. Ross No. 14CA3445, 2014-Ohio-4979, ¶ 17. Additionally, appellate courts review "a trial court's orders regarding docket and case management for an abuse of discretion." *King v. Divoky*, 9th Dist. Summit No. CV 29769, 2021-Ohio-1712, ¶ 26.

B

**{¶47}** Civ.R. 15(A) states that after the initial pleadings have been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Although Civ.R. 15(A) provides that leave of court shall be freely given when justice so requires, litigants do not have an "absolute or unlimited right to amend a complaint." *State ex rel. Jeffers v. Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, ¶ 64, citing *Kinchen v. Mays*, 8th Dist. Cuyahoga No. 100672, 2014-Ohio-3325, ¶ 17.

**{¶48}** We further note that Civ.R. 16(A) requires litigants to attempt to agree upon a case management schedule and for the court to "consider such agreements in the establishment of any such schedule." Nevertheless, it is well-established that a trial court has "inherent authority to control its own docket and manage the cases before it." *Holsopple v. Holsopple*, 9th

Dist. Summit No. 29441, 2020-Ohio-1210, ¶ 18; *Matrix Acquisitions, L.L.C. v. Merriman*, 8th Dist. Cuyahoga No. 96280, 2011-Ohio-4419, ¶ 8, quoting *Mackey v. Steve Barry Ford, Inc.*, 8th Dist. Cuyahoga No. 58681, 1991 WL 95081, *2 (May 30, 1991); *Rudolph v. Ohio Dept. of Human Services*, 4th Dist. Meigs No. 00CA023, 2001 WL 379112, *2 (Apr. 9, 2001); *see State ex rel. Haley v. Davis*, 145 Ohio St.3d 297, 2016-Ohio-534, 49 N.E.3d 279, ¶ 13, citing *Horman v. Veverka*, 30 Ohio St.3d 41, 42-43, 506 N.E.2d 218 (1987) (recognizing "trial court's inherent power with respect to its orders and docket").

**{¶49}** To that end, Civ.R. 16(B)(3)(a) allows trial courts to enter a scheduling order that "limit[s] the time to * * * amend the pleadings." Once a court enters a scheduling order, then the "schedule may be modified only for good cause and with the court's consent." Civ.R. 16(B)(4). Furthermore, Civ.R. 16(D) states that a court's scheduling order "controls the course of the action unless the court modifies it."

**{¶50}** In the case at bar, appellant first contends that appellee gave written consent to his amended answer and counterclaims when appellee agreed via email to appellant's proposed case schedule. Appellant asserts that whether a party gave written consent is a legal issue that we review on a de-

novo basis.  Appellee, on the other hand, argues that whether it gave written consent is a factual finding subject to a manifest weight of the evidence standard of review.

{¶51} In the case sub judice, regardless of which standard should apply, we do not believe that the trial court erred by determining that appellee did not consent to appellant's amended answer and counterclaims.  As the trial court recognized, the parties discussed a proposed case schedule that the court had yet to approve.  Part of the parties' proposed case schedule included a date for appellee to file an amended complaint and a date for appellant to file an amended answer and counterclaims. The trial court, however, did not adopt the parties' proposed case schedule and did not allow either party to amend their pleadings.  Instead, the trial court imposed its own case schedule.  In view of the fact that the trial court did not adopt the parties' proposed case schedule, appellee cannot be deemed to have consented to appellant's amended answer and counterclaims.  Rather, any consent that appellee may have given was premised upon the trial court adopting the parties' proposed case schedule, which included dates for both parties to amend their pleadings.  Once the court entered its own scheduling order, that order controlled the proceedings.  *See* Civ.R. 16(D)

(a court's scheduling order "controls the course of the action unless the court modifies it").

{¶52} Moreover, we do not believe that the trial court abused its discretion by striking appellant's amended answer and counterclaims or by denying appellant's motion for leave to file the amended pleading. "The general policy of Civ.R. 15(A) favors liberal amendment of pleadings." *State ex rel. Reese v. Ohio Dept. of Rehab. & Correction Legal Dept.*, ___ Ohio St.3d ___, 2022-Ohio-2105, ___ N.E.3d ___, ¶ 30. A trial court ordinarily abuses its discretion by denying a timely filed motion for leave to file an amended pleading when the amendment would allow the pleading party to "set forth a claim upon which relief can be granted." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). Conversely, a trial court does not abuse its discretion by denying a party leave to file an amended pleading when amending the pleading "would be futile." *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 20, citing *ISCO Indus., Inc. v. Great Am. Ins. Co.*, 2019-Ohio-4852, 148 N.E.3d 1279, ¶ 52 (1st Dist.); *see Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 123, 573 N.E.2d 622 (1991) ("[W]here a plaintiff fails to make a prima facie showing of

support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading."); *Kinchen v. Mays*, supra, at ¶ 17.

**{¶53}** In the case sub judice, we do not believe that the trial court abused its discretion by striking appellant's amended answer and counterclaims and by denying him leave to file an amended pleading. Permitting appellant to file an amended answer and counterclaims would have been futile due to the res judicata bar.

> It has long been the law of Ohio that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit." * * * The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.

*Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990), quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69, 494 N.E.2d 1387 (1986).

**{¶54}** The res judicata doctrine applies even if the first lawsuit did not "explore[] all the possible theories of relief." *Id.* Thus, res judicata extinguishes a litigant's claim even if the litigant "'is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not

demanded in the first action.'" *Grava*, 73 Ohio St.3d at 383,

quoting 1 Restatement of the Law 2d, Judgments (1982) 209,

Section 25; *see Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730

N.E.2d 958 (2000).

**{¶55}** In the case sub judice, in the first lawsuit between

the same parties that involved the same purchase contract, a

final judgment had been entered.  This existing final judgment

between the parties "is conclusive as to all claims which were

or might have been litigated in a first lawsuit." *Natl.*

*Amusements,* 53 Ohio St.3d at 62, quoting *Rogers v. Whitehall*, 25

Ohio St.3d 67, 69, 494 N.E.2d 1387 (1986).  Because appellant

did not "present every ground for relief in the first action,"

he is "forever barred from asserting [them]." *Id.*

Consequently, the trial court did not abuse its discretion by

striking appellant's amended pleading or by denying him leave to

file the amended pleading.

**{¶56}** Appellant also asserts that the trial court

prematurely ruled upon appellee's motion to strike and deprived

him of an opportunity to be heard.  We, however, agree with

appellee that the trial court ultimately considered all of

appellant's arguments.  In December 2019, the trial court held a

hearing and allowed appellant to present an argument regarding

his amended answer and counterclaims and his claim that appellee's counsel had agreed to the filing. Consequently, any error that may have occurred by prematurely striking appellant's amended answer and counterclaims is harmless error that we must disregard. *See Watershed Mgt., L.L.C. v. Neff*, 4th Dist. Pickaway No. 10CA42, 2012-Ohio-1020, ¶ 67 (trial court errs by ruling upon motion before allowing nonmoving party adequate response time but error may be harmless); *Entingh v. Old Man's Cave Chalets, Inc.*, 4th Dist. No. 08CA14, 2009-Ohio-2242, ¶ 21-22 (ruling on motion to compel before adverse party had opportunity to respond is harmless error when court considered adverse party's argument in a subsequent motion to vacate the premature ruling).

**{¶57}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

                                    III

**{¶58}** In his third assignment of error, appellant asserts that the trial court erred by granting appellee summary judgment. Appellant claims that appellee failed to satisfy its initial Civ.R. 56 burden and that the following questions of fact remain: (1) whether appellee properly terminated appellant's farming rights; (2) if so, whether appellee

terminated those rights as to the entire tract or to only a portion of the tract; and (3) whether appellee's termination, to the extent that it was legally enforceable, was effective to prohibit all access and all farming activities during the 2016 crop season.

**{¶59}** Appellee asserts that appellant fails to consider the primary basis for the trial court's summary judgment decision, i.e., that res judicata bars appellant's claims. Appellee contends that appellant's arguments remain focused upon the contract language even though the parties already have litigated the meaning of the contract language.

A

**{¶60}** Initially, we emphasize that appellate courts conduct a de novo review of trial court summary judgment decisions. *E.g., State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio St.3d 425, 2019-Ohio-1329, 128 N.E.3d 209, ¶ 8; *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13; *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court need not defer to a trial court's decision, but instead must independently review the record to determine if summary judgment is appropriate. *Grafton*, 77 Ohio St.3d at 105.

Civ.R. 56(C) provides in relevant part:

* * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶61}** Therefore, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *E.g., State ex rel. Whittaker v. Lucas Cty. Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, 172 N.E.3d 143, ¶ 8; *Pelletier* at ¶ 13; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

B

**{¶62}** In the case sub judice, the trial court granted appellee summary judgment based upon the doctrine of res judicata. "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6; *accord Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232-34, 118 S.Ct. 657, 663-64, 139 L.Ed.2d 580 (1998), fn.5 (citations omitted) (the term, "res judicata," traditionally describes both "claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it); and (2) issue preclusion, long called 'collateral estoppel' (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim")).

> With regard to claim preclusion, a final judgment or decree rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them. *[Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995)], citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943), paragraph one of the syllabus, and *Whitehead [v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969)], paragraph one of the syllabus. Moreover, an existing

> final judgment or decree between the parties is conclusive as to all claims that were or might have been litigated in a first lawsuit. *[Grava]* at 382, 653 N.E.2d 226, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990). "'The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.'" *Id.* at 382, 653 N.E.2d 226, quoting *Natl. Amusements* at 62, 558 N.E.2d 1178.

*Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, 43 N.E.3d 385, ¶ 7.

{¶63} Issue preclusion, or collateral estoppel, "'precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action.'" *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 277, 2017-Ohio-8845, 95 N.E.3d 359, ¶ 9, quoting *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969); *accord Lowe's Home Centers, Inc. v. Washington Cty. Bd. of Revision*, 154 Ohio St.3d 463, 2018-Ohio-1974, 116 N.E.3d 79, ¶ 33; *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998).

> While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. "In short, under the rule of

> collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit."

*Fort Frye*, 81 Ohio St.3d at 395 (citation omitted), quoting *Whitehead*, 20 Ohio St.2d at 112.

**{¶64}** The res judicata doctrine, therefore, "serves to preclude a defendant who has had his day in court from seeking a second on that same issue." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18, citing *State ex rel. Willys-Overland Co. v. Clark* (1925), 112 Ohio St. 263, 268, 147 N.E. 33. The doctrine "promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *Id.*

**{¶65}** In the case at bar, we believe that the trial court correctly determined that the doctrine of res judicata bars appellant's counterclaims. Appellant's counterclaims seek to relitigate the same claims that were, or could have been, litigated in the first lawsuit. In the first lawsuit, we determined that the contract language presented an "insuperable bar" to appellant's breach of contract claims. Appellant's counterclaims in the present case essentially repeat the claims raised in the first lawsuit. Therefore, our previous decision

governs the outcome of appellant's counterclaims, and appellant is barred from relitigating those claims.

{¶66} Moreover, res judicata bars appellant's additional arguments that appellee's termination notice violated the Sunshine Law and that he retained a right to continue farming a portion of the property. Appellant could have raised the Sunshine Law claim and the argument that he retained a right to continue farming a portion of the property in the first lawsuit, but did not. Therefore, res judicata precludes appellant from raising these additional claims.

{¶67} Appellant nevertheless argues that "in the context of declaratory judgments, 'res judicata precludes only claims that were actually decided.'" Appellant's Reply Brief at 2, quoting *State ex rel. Trafalgar Corp. V. Miami Cty. Bd. Of Commrs.*, 104 Ohio St.3d 350, 2004-Ohio-6406, 819 N.E.2d 1040, ¶ 22. However, even if true, we point out that in the first lawsuit appellant claimed that appellee breached the purchase contract in addition to seeking a declaratory judgment and other forms of relief. Our decision in the first lawsuit addressed appellant's breach of contract claim and determined that our resolution of his breach of contract claim was dispositive of the other claims raised in his complaint, all of which focused upon the language

of the contract and appellee's alleged breach of the contract.
*See Struckman I* at ¶ 15 and ¶ 27 (appellant argued that trial
court erred by dismissing complaint when he "set forth facts
that would allow him to recover on his breach of contract
claims" and stated that contract language presented "an
insuperable bar to relief on [appellant]'s breach of contract
claims"). Thus, we believe that appellant's reliance upon
*Trafalgar* is misplaced.

C

**{¶68}** Appellant also argues that the trial court incorrectly
entered summary judgment in appellee's favor regarding its
trespass claim. "'The elements of civil trespass are (1) an
unauthorized intentional act and (2) entry upon land in the
possession of another.'" *Ogle v. Hocking Cty.*, 4th Dist.
Hocking No. 14CA3, 2014-Ohio-5422, ¶ 39, quoting *DiPasquale v.
Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶
102 (2d Dist.). Appellant contends that whether he had a
continued right to enter the property in 2016 constitutes a
genuine issue of material fact that precludes summary judgment
in appellee's favor. In particular, appellant asserts that the
following contract language shows that he had the right to
continue farming the property in 2016:

Seller shall be entitled to without charge from Buyer continue its Farming Activities on any part of the Real Estate purchased by buyer until Buyer commences construction on any such portion of the Real Estate or otherwise must occupy said portion of the Real Estate in connection with its intended use thereof. In the event Buyer notifies Seller by October 1 (Buyer shall provide Seller with as much advance notice as is reasonably possible of its intent to use the Real Estate) of any given year that Buyer intends to use the Real Estate purchased by Buyer, Seller agrees that Buyer shall not be liable to Seller for any loss or damage incurred by Seller, including the cost of any damaged crops on the Real Estate, as a result of Buyer's use of said Real Estate in the ensuing year. If Buyer fails to notify Seller of its intentions by October 1 of any given year as described above, then Buyer agrees to reimburse Seller for any loss or damage to Seller's crops planted on the Real Estate purchased by Buyer as a result of Buyer's use of said Real Estate in the ensuing year, in amounts mutually agreed to by both Seller and Buyer, or as determined by the actual loss incurred by Seller.

Appellant thus contends that res judicata does not prevent him from litigating this issue because none of the previous court decisions actually decided this specific issue.

{¶69} Assuming, arguendo, that res judicata does not bar appellant from litigating this issue, we do not agree with his argument that this contract language demonstrates that he had a right to continue farming the property in 2016 and that he could not have been trespassing on the property.

{¶70} The interpretation of a contract is a question of law that appellate courts independently review. *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d

833, ¶ 6. "In all cases involving contract interpretation, we start with the primary interpretive rule that courts should give effect to the intentions of the parties as expressed in the language of their written agreement." *Sutton Bank v. Progressive Polymers, L.L.C.*, 161 Ohio St.3d 387, 2020-Ohio-5101, 163 N.E.3d 546, ¶ 15, citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37. Courts presume that the language used in the contract reflects the parties' intent. *Smith v. Erie Ins. Co.*, 148 Ohio St.3d 192, 2016-Ohio-7742, 69 N.E.3d 711, ¶ 18; *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶71} Thus, courts must first review the plain and ordinary meaning of the language used in a contract "unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus; *accord Galatis* at ¶ 11. If the language is clear and unambiguous, "a court may look no further than the writing itself to find the intent of the parties." *Galatis* at ¶ 11 (citation omitted). "[A]

contract is unambiguous if it can be given a definite legal meaning." *Id.* (citation omitted).

**{¶72}** In the case sub judice, the contract language is unambiguous, and it does not state that appellant has the right to continue farming the property "in the ensuing year." Instead, the contract outlines appellee's liability, if any, to appellant for any damages during the year after appellee notifies appellant of its intent to begin using the property. The language indicates that the parties contemplated that appellant might plant crops before appellee notified him of its intention to use the property and that they determined, in advance, whether appellant would be entitled to compensation for any loss or damage to those crops if appellee's use of the property during the ensuing year damaged the crops. The language does not, however, give appellant a right to continue planting crops or otherwise to continue engaging in farming activities "in the ensuing year." Rather, the language clarifies appellee's obligations after it notifies appellant that it intends to begin using the property. It does not nullify the preceding language that gives appellant the right to continue farming the property only "until Buyer commences construction on any such portion of the Real Estate or otherwise

must occupy said portion of the Real Estate in connection with its intended use thereof."

{¶73} Consequently, we do not agree with appellant that the trial court incorrectly entered summary judgment in appellee's favor regarding its trespass claim.

D

{¶74} Appellant next argues that appellee failed to support its summary judgment motion with proper Civ.R. 56(C) evidence.

{¶75} Appellee, however, contends that it cured any defect when it later authenticated the documents from the previous court proceedings in its reply memorandum. Appellee further points out that the trial court granted appellant an opportunity to respond to appellee's reply memorandum.

{¶76} After our review, we agree with appellee's assertion. Moreover, appellee's motion rested upon res judicata principles, which in turn, relied upon previous court proceedings subject to judicial notice. "Both trial courts and appellate courts can take judicial notice of filings readily accessible from a court's website." *State v. Wright*, 4th Dist. Scioto Nos. 15CA3705 and 15CA3706, 2016-Ohio-7795, fn. 3; citing *In re Helfrich*, 5th Dist. Licking No. 13CA20, 2014-Ohio-1933, ¶ 35; *see also State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195,

2007-Ohio-4798, 874 N.E.2d 516, ¶ 8, 10 (court can take judicial notice of judicial opinions and public records accessible from the internet).  Consequently, we do not agree with appellant that the trial court improperly entered summary judgment in appellee's favor.

{¶77} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED

PICKAWAY, 21CA7

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.